UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| BRITTANY R.,[1]<br><br>    Plaintiff,<br><br>v.<br><br>FRANK BISIGNANO,<br>Commissioner of Social Security,<br><br>    Defendant. | Case No. 5:24-cv-01193-MAA<br><br>**MEMORANDUM DECISION AND ORDER REVERSING DECISION OF THE COMMISSIONER AND REMANDING FOR FURTHER ADMINISTRATIVE PROCEEDINGS** |

## I.     INTRODUCTION

On June 6, 2024, Plaintiff Brittany R. ("Plaintiff") filed a Complaint seeking review of Defendant Commissioner of Social Security's ("Commissioner" or "Defendant") final decision denying her application for disability insurance benefits under Title II of the Social Security Act. (Compl., ECF No. 1.)  Pursuant to 28 U.S.C. § 636(c), the parties consented to the jurisdiction of a United States Magistrate Judge.  (ECF Nos. 6–8.)  On August 6, 2024, Defendant filed an Answer

---

[1] Plaintiff's name is partially redacted in accordance with Federal Rule of Civil Procedure 5.2(c)(2)(B) and the recommendation of the Committee on Court Administration and Case Management of the Judicial Conference of the United States.

(Answer, ECF No. 11) and Certified Administrative Record ("AR," ECF Nos. 11-1–11-9). On September 5, 2024, Plaintiff filed a Brief. (Pl.'s Br., ECF No. 12.) On October 16, 2024, Defendant filed a Response Brief. (Def.'s Br., ECF No. 16.) On August 30, 2024, Plaintiff filed her Reply in Support of Plaintiff's Brief. (Reply, ECF No. 17.) This matter is fully briefed and ready for decision.

The Court deems the matter appropriate for resolution without oral argument. *See* Fed. R. Civ. P. 78(b); C.D. Cal. L.R. 7-15. For the reasons discussed below, the Court reverses the decision of the Commissioner and remands the matter for further administrative proceedings.

## II. SUMMARY OF ADMINISTRATIVE PROCEEDINGS

On February 8, 2021,[2] Plaintiff filed a Title XVI application for supplemental security income, alleging disability beginning April 1, 2020. (AR 196–210.) The Commissioner denied the application on July 12, 2021 (*Id.* at 102–106) and again upon reconsideration on March 28, 2022 (*Id.* at 124–128.) On April 18, 2022, Plaintiff requested a hearing before an Administrative Law Judge ("ALJ"). (*Id.* 130.) ALJ Barry O' Melinn conducted a telephonic hearing on September 6, 2023, at which he heard testimony from Plaintiff, who was represented by counsel, and a vocational expert. (*Id.* at 34–49.)

On September 21, 2023, the ALJ issued a decision finding that Plaintiff was not disabled after making the following findings under the Commissioner's five-step evaluation. (*Id.* at 17–27.) At step one, the ALJ found that Plaintiff had not engaged in substantial gainful activity since the application date. (*Id.* at 19 ¶ 1.) At step two, the ALJ found that Plaintiff had the following severe impairments: multiple sclerosis and obesity. (*Id.* ¶ 2.) At step three, the ALJ found that Plaintiff did not have an impairment or combination of impairments that met or medically

---

[2] In the record, the Title XVI application is dated March 19, 2021 (AR 196-210).

2

equaled the severity of one of the agency's listed impairments. (*Id.* 22 ¶ 4.) Next, the ALJ found that Plaintiff had the following Residual Functional Capacity ("RFC"):

> [T]he claimant has the residual functional capacity to perform medium work as defined in 20 CFR 416.967(c) except that she can frequently climb ramps and stairs; occasionally climb ladders, ropes, or scaffolds; and frequently balance, stoop, kneel, crouch, and crawl. She could avoid concentrated exposure to extreme heat and vibration.

(AR 22 ¶ 4.)

At step four, the ALJ found that Plaintiff had no past relevant work. (*Id.* at 26 ¶ 5.) At step five, the ALJ concluded Plaintiff was not under a disability, as defined by the Social Security Act, from the date the application was filed through the date of decision. (*Id.* at 27 ¶ 10.)

On April 8, 2024, the Appeals Council denied Plaintiff's request for review. (*Id.* at 1–63.) Plaintiff now seeks judicial review of the ALJ's decision, which stands as the final decision of the Commissioner. *See* 42 U.S.C. § 405(g).

## III.  STANDARD OF REVIEW

Pursuant to 42 U.S.C. § 405(g), the Court reviews the Commissioner's final decision to determine whether the Commissioner's "decision to deny benefits... 'is not supported by substantial evidence or is based on legal error.'" *Treichler v. Comm'r of SSA*, 775 F.3d 1090, 1098 (9th Cir. 2014) (quoting *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995)). "'Substantial evidence' means more than a mere scintilla, but less than a preponderance; it is such relevant evidence as a reasonable person might accept as adequate to support a conclusion." *Lingenfelter v. Astrue*, 504 F.3d 1028, 1035 (9th Cir. 2007) (quoting *Robbins v. SSA*, 466 F.3d 880, 882 (9th Cir. 2006)); *see also Richardson v. Perales*, 402 U.S. 389, 401

(1971). The Court "must consider the record as a whole, weighing both the evidence that supports and the evidence that detracts from the Commissioner's conclusion, and may not affirm simply by isolating a specific quantum of supporting evidence." *Garrison v. Colvin*, 759 F.3d 995, 1009 (9th Cir. 2014) (quoting *Lingenfelter*, 504 F.3d at 1035). "'Where evidence is susceptible to more than one rational interpretation,' the ALJ's decision should be upheld." *Orn v. Astrue*, 495 F.3d 625, 630 (9th Cir. 2007) (quoting *Burch v. Barnhart*, 400 F.3d 676, 679 (9th Cir. 2005)). "If the evidence can support either affirming or reversing the ALJ's conclusion, [a court] may not substitute [its] judgment for that of the ALJ." *Robbins*, 466 F.3d at 882.

## IV.   DISCUSSION

### A.   Disputed Issues

Plaintiff raises three disputed issues:

1. Whether the ALJ erred in rejecting Dr. Truong's[3] medical opinion.

2. Whether the ALJ erred in finding no limitations considering Plaintiff's mental condition.

3. Whether the ALJ impermissibly rejected Plaintiff's subjective symptom testimony.

(Pl.'s Br. 8, 11, 14.)

For the reasons discussed below, the Court finds that reversal and remand for further administrative proceedings are warranted for Issue Three, based on the ALJ's failure to properly assess Plaintiff's pain testimony. Having found that remand is warranted, the Court declines to address Plaintiff's remaining arguments. *See Hiler v. Astrue*, 687 F.3d 1208, 1212 (9th Cir. 2012) ("Because we remand the case to the ALJ for the reasons stated, we decline to reach [plaintiff's]

---

[3] Both Plaintiff and the ALJ decision incorrectly refer to "Dr. Townsend." (*See* AR 332, 508, 512, 513, 519-523.)

alternative ground for remand."); *see also Augustine ex rel. Ramirez v. Astrue*, 536 F. Supp. 2d 1147, 1153 n.7 (C.D. Cal. 2008) ("[The] Court need not address the other claims plaintiff raises, none of which would provide plaintiff with any further relief than granted, and all of which can be addressed on remand.").

### B.  Applicable Law

When assessing a claimant's credibility regarding subjective symptom testimony or allegations, the ALJ must engage in a two-step analysis. *Trevizo v. Berryhill*, 871 F.3d 664, 678 (9th Cir. 2017). "First, the ALJ must determine whether the claimant has presented objective medical evidence of an underlying impairment 'which could reasonably be expected to produce the pain or other symptoms alleged.'" *Garrison*, 759 F.3d at 1014 (quoting *Lingenfelter*, 504 F.3d at 1035–36). "In this analysis, the claimant is not required to show 'that her impairment could reasonably be expected to cause the severity of the symptom she has alleged; she need only show that it could reasonably have caused some degree of the symptom.'" *Id*. (quoting *Smolen v. Chater*, 80 F.3d 1273, 1282 (9th Cir. 1996)). "Nor must a claimant produce 'objective medical evidence of the pain or fatigue itself, or the severity thereof.'" *Id*. (quoting *Smolen*, 80 F.3d at 1282).

If the claimant satisfies this first step, and there is no evidence of malingering, the ALJ must provide specific, clear and convincing reasons for rejecting the claimant's testimony about the symptom severity. *Garrison*, 759 F.3d at 1014–15; *see also Robbins*, 466 F.3d at 883 ("[U]nless an ALJ makes a finding of malingering based on affirmative evidence thereof, he or she may only find an applicant not credible by making specific findings as to credibility and stating clear and convincing reasons for each."). "This is not an easy requirement to meet: 'The clear and convincing standard is the most demanding required in Social Security cases.'" *Garrison*, 759 F.3d at 1015 (quoting *Moore v. Comm'r of SSA*, 278 F.3d 920, 924 (9th Cir. 2002)). The ALJ must evaluate "the intensity and persistence of

5

those symptoms to determine the extent to which the symptoms limit [the claimant's] ability to perform work-related activities for an adult . . . ." Social Security Ruling 16-3p, 2016 SSR LEXIS 4, at *4 (Oct. 25, 2017).

While the ALJ cannot "delve into wide-ranging scrutiny of the claimant's character and apparent truthfulness," *Trevizo*, 871 F.3d at 678 n.5, the ALJ may consider "prior inconsistent statements concerning the symptoms, and other testimony by the claimant that appears less than candid; . . . unexplained or inadequately explained failure to seek treatment or to follow a prescribed course of treatment; and . . . the claimant's daily activities," *Ghanim v. Colvin*, 763 F.3d 1154, 1163 (9th Cir. 2014) (quoting *Smolen*, 80 F.3d at 1284). Inconsistencies between a claimant's testimony and conduct, or internal contradictions in the claimant's testimony, also may be relevant. *Burrell v. Colvin*, 775 F.3d 1133, 1137–38 (9th Cir. 2014). In addition, the ALJ may consider "the claimant's work record and observations of treating and examining physicians and other third parties regarding, among other matters, the nature, onset, duration, and frequency of the claimant's symptom; precipitating and aggravating factors; [and] functional restrictions caused by the symptoms . . . ." *Smolen*, 80 F.3d at 1284. However, it is improper for an ALJ to reject subjective testimony based "'solely on a lack of objective medical evidence to fully corroborate' the claimant's allegations." *Bray v. Comm'r of SSA*, 554 F.3d 1219, 1227 (9th Cir. 2009) (quoting *Bunnell v. Sullivan*, 947 F.2d 341, 345 (9th Cir. 1991)).

The ALJ must make "a credibility determination with findings that are sufficiently specific to permit the court to conclude that the ALJ did not arbitrarily discredit claimant's testimony." *Tommasetti v. Astrue*, 533 F.3d 1035, 1039 (9th Cir. 2008) (quoting *Thomas v. Barnhart*, 278 F.3d 947, 958 (9th Cir. 2002)); *see Brown-Hunter v. Colvin*, 806 F.3d 487, 493 (9th Cir. 2015) ("A finding that a claimant's testimony is not credible 'must be sufficiently specific to allow a reviewing court to conclude the adjudicator rejected the claimant's testimony on

permissible grounds and did not arbitrarily discredit a claimant's testimony regarding pain.'" (quoting *Bunnell*, 947 F.2d at 345–46)).  Although an ALJ's interpretation of a claimant's testimony may not be the only reasonable one, if it is supported by substantial evidence, "it is not [the court's] role to second-guess it." *Rollins v. Massanari*, 261 F.3d 853, 857 (9th Cir. 2001).

### C. Background

#### 1. Function Report and Third-Party Report

Plaintiff's first articulation of her symptoms appears in a function report dated September 18, 2021 ("2021 Function Report"). (2021 Report, AR 280.)  At that time, Plaintiff reported that she was experiencing a loss of feeling in her hands and was suffering from pain in her legs, headaches, and fatigue. (*Id.*) Additionally, Plaintiff mentioned insomnia and back pain. (*Id.*)

The 2021 Function Report also includes a detailed account of Plaintiff's daily activities at the time. While having no problem with personal care, Plaintiff was unable to cook a "complete" meal. (*Id.*) Because she could not remain standing for more than ten minutes, Plaintiff was only able to prepare sandwiches or warm frozen meals every day. (*Id.* at 282.) Plaintiff was able to do the laundry only because it did not require her to remain standing (*Id.*) Plaintiff could go out alone for no more than 20 minutes once a week, drive her own car when deemed necessary and only if her leg pain allowed her to do so; otherwise, she would ask for a ride (*Id*). Her socialization was reduced to phone calls every few days and visiting friends "every couple months." (*Id.* at 284.)

Plaintiff also reported several limitations derived from her symptoms. These limitations included being able to lift to three pounds, stand for no more than twenty to forty minutes, walk only up to twenty minutes, and pay attention for no longer than ten minutes. (*Id.* at 285.) Plaintiff had "trouble thinking so talking [was] difficult at times." (*Id.*) Plaintiff needed to re-read multiple times what she had read

and ask for clarifications or repetitions of what had been said to her (*Id.*) Plaintiff also reported that, because of the fatigue, it was "hard getting through a day" without taking breaks. (*Id.* at 281.) For instance, she needed to rest after taking a shower every day. (*Id.*) The headaches would "come and go all day," and they felt like "throbbing pain . . . a bad freeze." (*Id.* at 288.) Before these symptoms started to appear, Plaintiff was able to "stand, walk for periods of time, handle the heat, not need naps." (*Id.* at 281.)

Plaintiff's statements about her symptoms were corroborated by a third-party function report of September 2021, signed by Robert Arthur Peterson ("Third-Party Report"). Mr. Peterson, who claimed to be Plaintiff's "long time friend," noted that Plaintiff was having "a hard time getting around." (*Id.* at 290.) Mr. Peterson was taking care of Plaintiff's cat because she was not able to do it by herself. (*Id.* at 291.) With regard to Plaintiff's situation before the symptoms appeared, Mr. Peterson noted that Plaintiff "was able to get through the day without rest . . . [and] go grocery shopping without getting tired." (*Id.*) Mr. Peterson confirmed that Plaintiff suffered from fatigue. (*See id.* at 294 (stating that Plaintiff had no hobbies or interests because "she g[ot] tired very easy" and that "she c[ouldn't] do much of anything"); *see also id.* at 293 (explaining that Plaintiff did not do house or yard work because she felt "overheated," and "too tired (risk of passing out)"); *see also id.* at 292 (stating that Plaintiff did not cook because of "to[o] much fatigue").)

Mr. Peterson's account of Plaintiff's daily activities was consistent with Plaintiff's statements. With respect to Plaintiff's personal care, Mr. Peterson detailed that Plaintiff got tired of dressing, that she had to sit down in the shower, and that it was difficult for her to wash her hair. (*Id.* at 291.) Plaintiff could not "cook for herself anymore," and therefore her meals were "always frozen," which ultimately resulted in Plaintiff's health worsening "due to non fresh [sic] meals." (*Id.* at 292.) Consistent with Plaintiff's testimony, Mr. Peterson stated that Plaintiff was only able to go to the store for twenty to thirty minutes because she could not

bear standing any longer. (*Id.* at 293.) Plaintiff's weekly trips to the store would take place in the company of someone else, and only when she was in need to get "more food or things like deodorant." (*Id.* at 294.)

### 2. Hearing Testimony

At the hearing of September 6, 2023, Plaintiff thoroughly described the symptoms referred to above and explained their evolution as detailed below.

Plaintiff suffered from numbness in her arms, legs, and hands. (*Id.* at 40.) Plaintiff sometimes experienced "tingling," meaning she felt "like . . . walking on like [sic] pin needles." (*Id.*). The pain was harder in Plaintiff's left side, which also felt weaker than her right side. (*Id.*)

Plaintiff also suffered from loss of eyesight and intense headaches. Once or twice a week, Plaintiff's vision "g[ot] blurry" (*Id.* at 40), and her right eye went "blank" for periods over thirty minutes. (*Id*; *see also Id.* at 42). Plaintiff experienced headaches "half of the week," which could "really hurt" and prevent her from being able "to get around' during the day. (*Id.* at 41). Plaintiff's headaches could affect her vision, too, and it normally took up to two hours for her to recover from the pain and be able to "focus again" on what she was doing. (*Id.* at 42.)

Plaintiff also had urinary problems. At the hearing, Plaintiff testified that she had "bladder issues." (*Id.* at 40-41.) Due to these issues, Plaintiff experienced "little accidents sometimes." (*Id.*) These accidents occurred "almost daily." (*Id.* at 46.) Plaintiff usually wore liners to avoid further episodes of urinary incontinence. (*Id.*)

Finally, Plaintiff noted that she suffered from fatigue "practically every day." (*Id.* at 41-42.) Although Ocrevus' infusions helped to ameliorate the fatigue, it came and went. (*See id.* at 43.) Due to the fatigue, Plaintiff needed to take breaks "basically like every day." (*Id.*) She had to take breaks after doing the laundry or even when taking a shower because she was not able to stand on her feet very

///

much. (*See id.* at 43-44.) Plaintiff had to take about two or three one-hour breaks in a day. (*Id.* at 44.)

### D.   Analysis

At the first step of the two-step evaluation, the ALJ found that Plaintiff's "medically determinable impairments could reasonably be expected to cause the alleged symptoms." (*Id.* at 23.) At the second step, however, the ALJ found that Plaintiff's "statements concerning the intensity, persistence and limiting effects of these symptoms [were] not entirely consistent with the medical evidence and other evidence in the record." (*Id.*) As the ALJ found no evidence of malingering, he was required to provide specific, clear and convincing reasons for rejecting Plaintiff's subjective symptom statements. *See Garrison*, 759 F.3d at 1014–15.

First, Plaintiff argues that the ALJ did not specifically identify the rejected testimony. (Pl's Br. 18.) Defendant responds that the ALJ did contemplate Plaintiff's account of her symptoms in its entirety, "and then pointed to specific record evidence that contradicted those allegations." (Def's Br. 9.) The Court agrees with Defendant. The ALJ decision did consider all Plaintiff's symptoms listed in the record, namely numbness, tingling, leg and back pain, headaches, blurred vision, fatigue, and urinary incontinence. (*See generally* AR 22-24.) Accordingly, the Court finds that, in assessing Plaintiff's subjective symptoms, the ALJ properly discharged its duty to "state specifically which symptom testimony is not credible." (*Smolen,* 80 F.3d at 1284.)

Second, Plaintiff contends that the ALJ "failed to articulate clear and convincing reasons to reject Plaintiff's symptoms testimony." (Pl's Br. 18). Defendant responds that the ALJ properly discounted Plaintiff's symptom testimony as inconsistent with: (1) Plaintiff's own statements and activities of daily living, and (2) objective medical evidence in the record (Def's Br. 5, 8.) The Court reviews each reason in turn.

1. Daily Activities

The ALJ noted that Plaintiff's daily activities included driving a car, maintaining her personal care, going out alone, grocery shopping, making simple meals, doing laundry, and socializing. (AR 25.) In the ALJ's view, all of these activities were "consistent with basic work functions." (*Id.* at 24.) Accordingly, the ALJ concluded that Plaintiff's activities, along with objective medical evidence in the record, showed that Plaintiff was able to perform "medium work" despite her limitations (*Id.*)

An ALJ may consider activities of daily living in evaluating the intensity, persistence, and limiting effects of a claimant's symptoms. 20 C.F.R. §§ 404.1529(c)(3), 416.929(c)(3). "Inconsistencies between a claimant's testimony and the claimant's reported activities provide a valid reason for an adverse credibility determination." *Burrell*, 775 F.3d at 1137. However, "ALJs must be especially cautious in concluding that daily activities are inconsistent with testimony about pain, because impairments that would unquestionably preclude work and all the pressures of a workplace environment will often be consistent with doing more than merely resting in bed all day." *Garrison*, 759 F.3d at 1016 (finding that testimony of talking on the phone, preparing meals daily, and occasionally cleaning one's room were consistent with the pain claimant described in her testimony, and therefore the ALJ erred in discounting her pain testimony as supposedly inconsistent with her daily activities).

Here, Defendant contends that the ALJ "reasonably relied" on Plaintiff's activities of daily living. (Def's Br. 8.) The Court disagrees on two grounds.

First, the ALJ did not consider the full extent of Plaintiff's testimony regarding her daily activities, particularly her limitations in completing those activities. (AR 24.) Instead, the ALJ limited himself to listing Plaintiff's activities without addressing her limitations in completing those activities. *See Robinson v. Berryhill*, No. ED CV 17-2238-PLA, 2018 U.S. Dist. LEXIS 133911, at *24 (C.D.

Cal. Aug. 8. 2018) (finding error where "ALJ merely recited plaintiff's activities without taking into account her alleged limitations in completing those activities.").

As a starting point, the ALJ failed to address Plaintiff's driving limitations. Although Plaintiff admitted to having a valid driver's license, she did not say she was able to drive, nor did she ever assert that she actually drives. (*See generally* AR 41, 282.) When the ALJ specifically inquired about driving at the hearing, Plaintiff clearly stated that she does not drive and that she usually asks for rides on the rare occasions she goes out. (*Id.* at 41.) This statement is consistent with other relevant evidence in the record. (*See id.* at 282; *see also id.* at 489 ("[H]er method of transportation is being driven.").)

With respect to Plaintiff's ability to maintain personal care, the ALJ's reasoning relied solely on Plaintiff's Functional Report, overlooking Plaintiff's hearing testimony that she could not stand on her feet while taking a shower, which was consistent with other evidence in the record. (*Id.* at 44; *see also id.* at 293 (Mr. Peterson's Third-Party Report, noting Plaintiff's needs to sit down in the bathtub while taking a shower and that it was difficult for her to wash her hair); *see also id.* at 489 (Plaintiff's remarks that she showers only if she feels well "enough" and dresses with assistance)).

The ALJ similarly overlooked Plaintiff's testimony regarding her ability to go out and do grocery shopping (*Id.* at 25.) Plaintiff's testimony was that she went out when strictly necessary, for very short periods, and usually with assistance because she was "not always" able to push the cart or lift certain things. (*Id.* at 42, 282.) Again, the record is fully consistent with these statements, lending credibility to Plaintiff's statements rather than belying them. (*See id.* at 293-294 (Mr. Peterson's statements that Plaintiff only went to the store with someone else to get vital items like food and deodorant); *see also id.* at 489 (Plaintiff's remarks that she needed help grocery shopping and only "sometimes" went places by herself).)

///

The ALJ also misconstrued Plaintiff's testimony regarding cooking and doing laundry. While the ALJ noted that Plaintiff was able to "make simple meals" (*id.* at. 24), he did not consider Plaintiff's testimony that she was unable to prepare a "complete meal" and, as a result, her daily intake consisted solely of sandwiches, frozen meals and "easy food." (*Id.* at 281-282, 292, 489.) Likewise, in concluding that Plaintiff's symptoms conflicted with her ability to do laundry (*id.* at 25), the ALJ did not consider Plaintiff's testimony that such a conflict does not exist because doing laundry does not require her to remain standing. (*Id.* at 282.) Moreover, the Court sees no clear contradiction between Plaintiff's ability to complete basic household chores—such as preparing simple meals and doing laundry—and the limiting effects of her symptoms. *Ghanim*, 763 F.3d at 1165.

Finally, the ALJ mischaracterized Plaintiff's ability to "socializ[e] with others." (AR 25.) Plaintiff's testimony evidences that her socialization was reduced to a minimum, precisely because of her symptoms and associated limitations. Her main interactions occurred on the phone, her relationships with her family were "nonexistent" and she only visited friends in-person every couple month. (*Id.* at 282; 489.)

Because the ALJ mischaracterized Plaintiff's level of daily activity, the ALJ's adverse credibility finding based on such characterization was erroneous. (*See Rawa v. Colvin,* 672 Fed. Appx. 664, 666 (9th Cir. 2016) (finding that the ALJ mischaracterized the plaintiff's level of activity because he omitted "a number of salient and dispositive facts and details," and thus concluding that "[s]uch an inaccurate representation of the record cannot constitute a specific, clear, and convincing reason for rejecting [the plaintiff's] testimony.").)

Second, the ALJ erred in equating Plaintiff's activities of daily life with an ability to perform "basic work functions" (AR 24.) Here, the ALJ overlooked the "critical differences" between activities of daily living and the demands of full-time employment. *See Stassin v. Saul,* No. 5:19-CV-00930 (VEB), 2020 U.S. Dist.

LEXIS 216190, at *17 (C.D. Cal. Nov. 18, 2020) (citing *Garrison*, 759 F.3d at 1016). ("The critical differences between activities of daily living and activities in a full-time job are that a person has more flexibility in scheduling the former than the latter, can get help from other persons . . ., and is not held to a minimum standard of performance, as she would be by an employer. The failure to recognize these differences is a recurrent, and deplorable, feature of opinions by administrative law judges in social security disability cases."). *Id.* Rather than reflecting Plaintiff's ability to perform "basic work functions" (AR 24), Plaintiff's testimony and other evidence in the record shows that she does not "do much," requiring up to three one-hour breaks per day and being constantly subjected to repeated "accidents" because of urinary incontinence. (*Id.* at 41, 43-44, 46, 281, 290, 293, 492-493, 503).

For these reasons, the ALJ's rejection of Plaintiff's subjective symptom testimony based on inconsistency with daily activities was not a clear and convincing reason based on substantial evidence in the record.

### 2.   Objective Medical Evidence

Plaintiff argues that the ALJ's analysis of objective medical evidence did not account for the "periods of waxing and waning of symptoms . . . consistent with relapsing multiple sclerosis." (Pl's Br. 19.) Defendant responds that the ALJ properly discounted Plaintiff's subjective symptom testimony based on a lack of objective medical evidence supporting the severity of Plaintiff's complaints. (Def's. Br., 5-8.)  Either way, the ALJ cannot reject Plaintiff's subjective symptom statements solely based on a lack of objective medical evidence to corroborate them. *See, e.g., Bunnell*, 947 F.2d at 345 ("[A]n adjudicator may not reject a claimant's subjective complaints based solely on a lack of objective medical evidence to fully corroborate the alleged severity of pain."); *Robbins*, 466 F.3d at 883 ("While an ALJ may find testimony not credible in part or in whole, he or she may not disregard it solely because it is not substantiated affirmatively by objective

14

medical evidence."). Here, even assuming the record supports the ALJ's reasoning regarding the lack of support from objective medical evidence, the ALJ did not identify any other clear and convincing reason, supported by substantial evidence, to discount Plaintiff's subjective symptom statements. Standing alone, the purported lack of support from objective medical evidence is not a legally sufficient reason to discount Plaintiff's symptom testimony.

\* \* \*

In sum, the ALJ's decision does not provide clear and convincing reasons for rejecting Plaintiff's subjective symptom allegations. This error is not harmless because Plaintiff's credibility was not inconsequential to the ALJ's consideration of Plaintiff's limitations. *See Molina v. Astrue*, 674 F.3d 1104, 1115 (9th Cir. 2012) (explaining that "an ALJ's error is harmless where it is 'inconsequential to the ultimate nondisability determination.'" (citing *Carmickle*, 466 F.3d at 885) (additional citations omitted)). Accordingly, reversal is warranted.

### E.   Remand for Further Proceedings

The decision whether to remand for further proceedings or order an immediate award of benefits is within the district court's discretion. *See Harman v. Apfel*, 211 F.3d 1172, 1178 (9th Cir. 2000). Where no useful purpose would be served by further administrative proceedings, or where the record has been fully developed, it is appropriate to exercise this discretion to direct an immediate award of benefits. *See id*. at 1179 ("[T]he decision of whether to remand for further proceedings turns upon the likely utility of such proceedings."). However, where, as here, the circumstances of the case suggest that further administrative review could remedy the Commissioner's errors, remand is appropriate. *See McLeod v. Astrue*, 640 F.3d 881, 888 (9th Cir. 2011). Specifically, remand is warranted here for reconsideration of Plaintiff's symptom statements because the ALJ's failure to

provide legally sufficient reasons for discounting such statements in the decision prevents this Court from meaningfully determining whether the decision is supported by substantial evidence. *See Treichler*, 775 F.3d at 1103 ("Because 'the agency's path' cannot 'reasonably be discerned,' we must reverse the district court's decision to the extent it affirmed the ALJ's credibility determination." (citation omitted)).

## V. ORDER

The Court **ORDERS** that judgment be entered reversing the decision of the Commissioner and remanding this matter for further administrative proceedings.

**IT IS SO ORDERED.**

DATED: August 4, 2025

_____
HONORABLE MARIA A. AUDERO
UNITED STATES MAGISTRATE JUDGE